McKiNNEY, J.,
delivered the opinion of the court.
This is an action of debt, brought upoii the official bond of William Welch, as sheriff and collector of the public taxes of Perry county, for the years, 1838, and 1839. The defendants are a portion of the sureties in said bond; Welch, the principal, and the other sureties, not being sued in this action.
The declaration alleges, that said Welch, as sheriff and collector aforesaid, collected for the year 1838, the sum of three hundred and forty-four dollars; and for the year 1839, the sum of three hundred and fifty-five dollars and ninety-five cents, being the amounts due to the State, for taxes, from said county, for said years.
The first breach of the condition of the bond assigned, is, the failure and refusal of said Welch to pay over, or account for, said sums of money, as by law, he was required to do. A second breach assigned, is, the failure and neglect of said Welch to collect the foregoing amounts of taxes due to the State, from said county.
The defendants pleaded several pleas, one of which ■only need be noticed. This plea, in substance, avers that the cleric of the county court of said county, failed to make out and deliver to said Welch, as sheriff and collector aforesaid, a tax list in the manner prescribed by law. Upon this plea, which expressly negatives an allegation of the declaration, issue was joined.
It appears from the proof, as set forth in the bill of exceptions, that Welch left this State about the year 1842. It further appears, that, on the trial, two books were produced and offered in evidence, on behalf of the plaintiff, which purported to be the tax lists, by authority of which, said Welch had collected the public *615 taxes of said county, for tbe years 1838, and 1839. Said books were in tbe bandwriting of the clerk of tbe county court of said county, or of a person employed in bis office. They contained lists of tbe names, taxable property, value, and amounts of taxes, as required by law; but they were not authenticated as “true transcripts from tbe record book” of the clerk, by certificate of tbe clerk thereon, or otherwise. It was further proved, that Welch bad these books in bis possession, during tbe years 1838, and 1839, and that be collected taxes, during those years, from said books; that bis habit was, when be received taxes, to make a cross-mark opposite tbe name of tbe party paying, and that most of the names bad such mark opposite to them. Three of tbe witnesses examined on tbe trial, proved that they bad severally paid their taxes to said Welch for each of said years.
Iiis honor, tbe circuit judge, was of opinion, and so instructed tbe jury, that the boobs, or supposed tax-lists above mentioned, not being authenticated or certified by' tbe clerk of tbe county court, as required by law, were nullities, and conferred no authority upon Welch, to collect tbe public taxes; and that the defendants, as bis sureties, were not liable upon their bond, for taxes received by him, without any valid authority. This is tbe substance of so much of tbe charge as is necessary to be noticed.
Tbe jury found for tbe defendants, and a new trial having been refused, tbe case is brought to this court by an appeal in error.
In considering this case, it must be kept in view, that tbe declaration has a two-fold aspect, and seeks to hold tbe defendants liable upon two distinct and oppo *616 site grounds: First, for the amount of taxes alleged to have been actually collected by "Welch, under and by virtue of the supposed tax list in bis hands: And, secondly, for his failure and neglect to collect the taxes. And the question for our determination is, whether the matter relied upon in the plea, the failure of the clerk to furnish the collector with a properly authenticated tax list, is sufficient to exonerate either the collector, or the defendants as his sureties, from liability on either of the grounds assumed in the declaration.
By the act of 1835, ch. 15, § 14, (as modified by the act of 1838, ch. 165, § 3,) it is made the duty of the clerk of the county court, within forty days after the court to which the revenue commissioners are required to make their returns of taxable property and polls, to record such returns in a well bound book; and also to make out on said record book the amount of each person’s taxes; and furthermore, he is required to deliver to the sheriff or collector, within said period of forty days, a true transcript from said record book.
The statute provides that when the sheriff or collector shall have received the list of polls and taxable property in his county, he shall appoint a day and place in each justice’s district, when and where he will attend to receive taxes, of which he is required to give at least twenty days’ notice, by previous advertisement, at four of the most public places in said district; and if any person shall fail to attend, or to pay his taxes, on or before the appointed day, it is made the duty of the collector to levy the same by distress and sale of the goods and chattels of the person in default.
*617 By tbe act of 1833, ch. 86, § 1, tbe failure or refusal of tbe clerk of the county court to furnish a tax list to tbe collector, in tbe time and manner pointed out by law, is declared to constitute a misdemeanor in office, for which be may be indicted in tbe circuit court ■ of tbe county of which be is clerk; and upon conviction, may be removed from office. And by tbe second section of the same act, it is provided that, upon satisfactory proof of the fact being made to the treasurer and county trustee, of the failure or refusal of the clerk to furnish tbe tax list to the sheriff or collector, as directed by law, they are required to suspend taking judgment against such sheriff or collector, “until a reasonable time after the reception of said list shall enable him to collect said tax.”
The foregoing, statutory provisions establish the proposition laid down in tbe instructions of the circuit judge, and repeated in argument here, that a transcript from the record book of the clerk, or tax list, as it is usually called, made out as required by law, and duly authenticated by the clerk, is the only authority by virtue of which the sheriff or collector is entitled to demand or receive tbe public taxes. Such tax list, in tbe bands of the collector, has the force and effect of an execution, and in virtue thereof, he may distrain the personal goods of the party failing to pay his taxes. But, without such tax list in his bands, every tax-payer may refuse to pay, and tbe collector has neither the right to demand nor the power to coerce payment. It would seem to follow, therefore, that in a proceeding against the sheriff or collector, or against his sureties, by suit or otherwise, founded merely upon the neglect or omission of the sheriff or collector to collect the taxes, tbe defense that *618 tlie cleric bad failed or refused to furnish liim with a tax list, properly authenticated as required by law, would form a bar; because, until such reasonable time after the reception of the tax list as would be sufficient to enable him to collect the taxes, the sheriff or collector would be guilty of no negligence or default.
But the rule is very different, where the sheriff, or collector has actually received public revenue, either under an invalid authority, or without any color - of authority. In such case, neither he nor his sureties can be heard to resist a recovery of the money thus received, on the ground of want of proper authority to receive the same. In the case of the Governor vs. Scanland, 6 Humph., 195, it was held, that, notwithstanding the •election of Scanland to the office of sheriff, was utterly void, by the express provision of the act of 1844, ch. 196, § 2, and his induction into the office wholly illegal, yet, that having, under color of his office of sheriff de facto, received a portion of the public taxes which he had failed to pay over, neither he, nor his sureties who had voluntarily bound themselves for the faithful performance of his duties, could absolve themselves from their obligation, by insisting that his appointment was void, and consequently, that he had no authority to receive the taxes. That was a much stronger case than the present. There, the person had wrongfully intruded himself into office, and had not the color of lawful authority to receive the taxes. In the present case, the appointment of the sheriff was in all respects regular, and in all respects free from exception. He had in his hands, in fact, a tax list made out and furnished to him by the clerk, subject to no exception, save the want of proper authentication; and although invalid for that reason, he *619 chose to regard it as valid; and by authority thereof, pfoceeded to collect and receive the taxes. Upon this state of facts, it is very clear, that the invalidity of the tax list, constitutes no defense to the action, so far as it respects the amount of taxes actually received by the sheriff. The matter of the plea of the defendants, is altogether irrelevant, and the issue joined thereon, wholly immaterial.
In this view it results, that as far forth as it shall be made to appear, from the books referred to in the proof, or other competent evidence, that the taxes were in fact received by the sheriff, the defendants will be liable therefor.
The judgment will therefore be reversed, and the case be remanded to the circuit court for a new trial. And upon the return of the ease to that court, it will perhaps be advisable to add a new count to the declaration, adapted to the view of the case herein presented.